**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RODNEY GREEN, Inmate No. LB3474,**<br>**Plaintiff,** | **CIVIL ACTION** |
| **v.** | |
| **WEXFORD HEALTH SOURCES, INC.,**<br>**CORRECT CARE SOLUTIONS, LLC,**<br>**JOHN C. THOMAS, in his official capacity**<br>**as Superintendent of Pennsylvania State**<br>**Correctional Institution Chester, and**<br>**PENNSYLVANIA DEPARTMENT OF**<br>**CORRECTIONS,**<br>                    **Defendants.** | **NO.  16-3630** |

**DuBois, J.**                                                        **December 13, 2016**

**M E M O R A N D U M**

## I.      INTRODUCTION

This is a civil rights case arising out of allegedly inadequate medical care provided to

plaintiff Rodney Green during his incarceration.  Plaintiff asserts claims under 42 U.S.C. § 1983

for violation of his Eighth Amendment rights against the Pennsylvania Department of

Corrections ("DOC") and John C. Thomas, in his official capacity as Superintendent[1] of

Pennsylvania State Correctional Institution Chester ("SCI Chester").  Plaintiff also asserts

*Monell* claims under § 1983 for violation of his Eighth Amendment rights against Wexford

Health Sources, Inc. ("Wexford") and Correct Care Solutions, LLC ("Correct Care").

Presently before the Court are the DOC and Marirosa Lamas's Motion to Dismiss

Plaintiff's Amended Complaint and Wexford and Correct Care's Motion to Dismiss Plaintiff's

---

[1] Plaintiff filed this suit against John C. Thomas in his official capacity.  He was the
Superintendent of SCI Chester until July 16, 2016.  Under Federal Rule of Civil Procedure 25(d),
Marirosa Lamas, the current Superintendent of SCI Chester, is substituted automatically for
Thomas.  The Court will provide for the substitution in the accompanying Order.

Amended Complaint.  For the reasons that follow, the Court partially grants the DOC's and

Lamas's Motion and dismisses the claim against the DOC.  The Court denies Wexford and

Correct Care's Motion.

## II.    BACKGROUND

The facts as alleged in plaintiff's Amended Complaint are as follows.  In June 2012,

plaintiff suffered a gunshot wound that caused an incomplete spinal cord injury and was

hospitalized for a month.  Am. Compl. ¶¶ 9-10.  After his hospitalization, plaintiff was

incarcerated at a series of correctional facilities.  Am. Compl. ¶¶ 10-13.  In May 2013, while

plaintiff was at SCI Camp Hill, Wexford employees terminated plaintiff's ongoing physical

therapy.  Am. Compl. ¶ 14.  Approximately two months later, in July 2013, Wexford had an

outside provider, Donald James, DPT, assess plaintiff's need for physical therapy.  Am. Compl.

¶ 15.  Dr. James opined that plaintiff "could benefit from ongoing physical therapy intervention

to work on his deficits" and would likely improve significantly with treatment.  Am. Compl.

¶ 16.  Despite this recommendation, plaintiff alleges[2] Wexford "elected to significantly decrease

[p]laintiff's PT treatment and cease all treatment by outside medical providers."  Am. Compl.

¶ 18.

In response to a grievance filed by plaintiff in October 2013, Wexford obtained another

physical therapy consultation and evaluation of plaintiff in December 2013.  Am. Compl. ¶ 20.

The outside provider, Dr. Timothy Hudson, stated that "without proper treatment to strengthen

muscles and decrease tone, [plaintiff] is at risk for contractures and not ever being able to walk

again."  Am. Compl. ¶ 22.  The doctor requested an update on plaintiff's care and a follow-up

---

[2] The Court notes that this allegation in paragraph 18 of the Amended Complaint appears to be inconsistent with the allegation in paragraph 14 that "the medical staff of Wexford decided to terminate" plaintiff's physical therapy in May 2013.

appointment.  Am. Compl., Ex. B, 1-2.  Wexford did not provide Dr. Hudson with an update, did not schedule a follow-up appointment, and instead prescribed plaintiff physical therapy once a month.  Am. Compl. ¶¶ 24-25.  In response in February 2014, plaintiff filed another grievance in which he again complained about the failure to provide adequate physical therapy.  Am. Compl. ¶ 26.

In May 2014, plaintiff was transferred to SCI Laurel Highlands "to provide him with his necessary medical treatment of intensive physical therapy."  Am. Compl. ¶ 27.  At that facility, plaintiff "finally began to receive some semblance of . . . intensive physical therapy."  Am. Compl. ¶ 29.  While plaintiff was at SCI Laurel Highlands, Wexford was replaced by Correct Care as exclusive provider of health services to inmates.  Am. Compl. ¶ 30.  In November 2014, Correct Care staff terminated plaintiff's physical therapy "based upon an unfounded medical basis uncorroborated by any past or present treating medical doctors."  Am. Compl. ¶ 30. Plaintiff was directed to complete unsupervised exercises as physical therapy in the future.  Am. Compl. ¶ 34.

Plaintiff subsequently filed another grievance concerning the lack of physical therapy. Am. Compl. ¶ 32.  His grievance was dismissed, and he was then transferred to SCI Forest.  Am. Compl. ¶ 32.  Since his designation to SCI Forest in December 2014, plaintiff has not received any physical therapy.  Am. Compl. ¶ 36.  In February 2016, plaintiff was transferred to SCI Chester where he remains incarcerated.  Am. Compl. ¶ 36.

On June 30, 2016, plaintiff filed suit, alleging that the defendants had violated his Eighth Amendment rights by providing inadequate medical care.  Wexford and Correct Care filed their first Motion to Dismiss for Failure to State a Claim on August 24, 2016.  In response, plaintiff amended his Complaint on September 7, 2016.  In his Amended Complaint, plaintiff alleged that

Wexford and Correct Care provided insufficient physical therapy pursuant to their policies or customs of providing inadequate medical care to inmates and failing to follow medical directives from outside providers.  Am. Compl. ¶¶ 44-46.  Plaintiff also alleged that the Department of Corrections and John C. Thomas, in his official capacity as Superintendent of SCI Chester, denied plaintiff adequate medical treatment, failed to follow medical instructions given by outside providers, and failed to adequately train its employees to ensure compliance with the policies and procedures of SCI Chester.  Am. Compl. ¶52.  Plaintiff later abandoned his failure to train theory.  Pl's Resp. to DOC and Lamas's Mot., 12-13.   Wexford and Correct Care, and the DOC and Lamas filed Motions to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim on September 9 and October 14, 2016, respectively.

## III.   APPLICABLE LAW – DEFENDANTS' MOTIONS TO DISMISS

The analysis of the law under Federal Rule of Civil Procedure 12(b)(6) and 42 U.S.C. § 1983 is applicable to both Motions to Dismiss.  The analysis of municipal liability is applicable only to Wexford and Correct Care's Motion to Dismiss.

### A.   Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to respond to a pleading by filing a motion to dismiss for "failure to state a claim upon which relief can be granted."  To survive a motion to dismiss, the complaint must allege facts that "'raise a right to relief above the speculative level.'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A district court first identifies those factual allegations that constitute nothing more than "legal

4

conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded. *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.*

  B. <u>Claims under 42 U.S.C. § 1983</u>

   To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that the defendant, acting under color of state law, deprived him of a right secured by the United States Constitution or federal law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). "The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners against the 'unnecessary and wanton infliction of pain.'" *Hamilton v. Leavy*, 117 F.3d 742, 746 (3d Cir. 1997) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Thus, "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

   In *Estelle v. Gamble*, the Supreme Court held that deliberate indifference to a prisoner's serious illness or injury constitutes cruel and unusual punishment in violation of the Eighth Amendment. 429 U.S. 97 (1976). "In order to sustain a constitutional claim, a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011). A prison official acts with a sufficiently culpable state of mind when the official acts with deliberate indifference. *Estelle*, 429 U.S. at 104-05.

C.      *Monell* Claim

The Court analyzes plaintiff's § 1983 claim against Wexford and Correct Care under the

standard of municipal liability first enunciated in *Monell v. New York City Department of Social*

*Services*, 436 U.S. 658 (1978).  *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d

Cir. 2003).  "[A] municipality cannot be held liable under § 1983 on a *respondeat superior*

theory."  *Monell*, 436 U.S. at 691.  Rather, to state a claim against a municipal entity under §

1983, a plaintiff must allege (1) a constitutional violation by a state actor (2) that was caused by

a municipal policy or custom.  *Id.* at 694; *see also Mulholland v. Gov't Cty. of Berks, Pa.*, 706

F.3d 227, 237 (3d Cir. 2013); *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240 (3d Cir. 2016)

("The threshold question in any § 1983 lawsuit is whether the plaintiff has sufficiently alleged a

deprivation of a constitutional right.").

# IV.      THE DEPARTMENT OF CORRECTIONS AND LAMAS'S MOTION[3]

A.      The Department of Corrections

The Court dismisses plaintiff's § 1983 claim against the Department of Corrections

("DOC"), under Count III, for lack of subject matter jurisdiction.  "Generally, states are immune

from suit by private parties in the federal courts."  *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195

(3d Cir. 2000); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000) ("[F]or over a

century now, we have made clear that the Constitution does not provide for federal jurisdiction

over suits against nonconsenting States.").  "Because the Commonwealth of Pennsylvania's

Department of Corrections is a part of the executive department of the Commonwealth, it shares

---

[3] While the DOC and Lamas's Motion to Dismiss was untimely filed by thirteen days, the Court properly considers it.  *See Obi-Tabot v. PHH Mortg. Corp.*, 2011 WL 13136197, *2 (E.D. Pa. November 21, 2011) ("Permission to plead after the allotted time is a matter for the discretion of the trial judge . . . .  Where the plaintiff has not made a motion for default judgment, and no other responsive pleading has been filed by the defendants, there is no unfairness to the plaintiffs in considering defendants' motion.").

in the Commonwealth's Eleventh Amendment immunity." *Lavia*, 224 F.3d at 195.  Eleventh

Amendment immunity may only be lost "(1) if the Commonwealth waived its immunity; or (2) if

Congress abrogated the States' immunity pursuant to a valid exercise of its power." *Id.*  The

Commonwealth has not waived its Eleventh Amendment immunity, 42 Pa. Cons. Stat. Ann.

§ 8521(b), and Congress did not abrogate state sovereign immunity when it enacted 42 U.S.C.

§ 1983, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989).

       B.    <u>Marirosa Lamas</u>

     The Court concludes that plaintiff has stated a claim of deliberate indifference to a

serious medical need with respect to Lamas.  Accordingly, the Court denies the Motion to

Dismiss as to the inadequate medical care claim asserted against Lamas.

     Plaintiff alleges that he has not received any physical therapy since his arrival at SCI

Chester, where he is currently incarcerated, despite two recommendations by outside providers.

Am. Compl. ¶¶ 35-36, 51-52.  He further alleges that he has "filed multiple grievances regarding

his continuous pain and need for extensive physical therapy" and that Lamas "knew of

[p]laintiff's serious medical condition." Am. Compl. ¶¶ 37, 50.  Lamas contends that she did not

act with "deliberate indifference" to plaintiff's medical needs and merely followed the directives

of medical professionals.

     To state a claim, plaintiff must aver that Lamas was deliberately indifferent to his serious

medical needs.  *Estelle*, 429 U.S. at 104.  The Court notes that defendants do not contend that

plaintiff has failed to sufficiently allege that his medical needs were serious.  Deliberate

indifference is "a conscious disregard of a substantial risk of serious harm." *Vargas v. City of

Phila.*, 783 F.3d 962, 973-74 (3d Cir. 2015).  "Where a prisoner has received some medical

attention and the dispute is over the adequacy of the treatment, federal courts are generally

reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *U.S. ex rel. Walker v. Fayette Cty., PA*, 599 F.2d 573, 575 n.2d (3d Cir. 1979). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). However, the United States Court of Appeals for the Third Circuit has found deliberate indifference in several circumstances, including "where the prison official (1) knows of a prisoner's medical need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Prison officials are also deliberately indifferent "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *Id.*

Plaintiff was evaluated by outside medical providers on two occasions during his incarceration. Am. Compl. ¶¶ 16, 22. Both medical providers recommended that plaintiff receive intensive physical therapy for his spinal injury. Am. Compl. ¶¶ 16, 22. One of the providers, Dr. Hudson, explicitly stated that plaintiff was at risk for losing the ability to walk if he did not receive intensive physical therapy. Am. Compl. ¶ 22. Despite these recommendations, healthcare providers and prison officials persisted in a course of irregular physical therapy that eventually was terminated. Am. Compl. ¶¶ 18, 24-25, 30.

Throughout this period, plaintiff repeatedly filed grievances, alerting prison officials to the claimed inadequacy of his medical treatment and his serious medical needs. Am. Compl. ¶ 37. Plaintiff alleges in his Complaint that Lamas knew of his medical need and necessary treatment recommended by two doctors, but failed to provide it. Am. Compl. ¶ 50. While plaintiff received some treatment at other institutions, he received no physical therapy after his

transfer to SCI Chester in February 2016.  Am. Compl. ¶¶ 37-38.  That limited treatment was provided to plaintiff at other institutions does not foreclose his claim against Lamas as Superintendent of SCI Chester.  *See West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978) ("[I]f deliberate indifference caused an easier and less efficacious treatment to be provided, the defendants have violated the plaintiff's Eighth Amendment rights by failing to provide adequate medical care.").  The Court concludes plaintiff's allegation that Lamas knew of his serious need for intensive physical therapy but denied him treatment is sufficient to state a § 1983 claim against Lamas.  The Court thus denies Lamas's Motion to Dismiss.

## V.    WEXFORD AND CORRECT CARE'S MOTION

The Court concludes that plaintiff has stated a *Monell* claim against defendants Wexford and Correct Care.  Plaintiff claims that, as provider of healthcare services to the inmates, defendants Wexford and Correct Care acted with deliberate indifference in implementing policies or customs that caused plaintiff to receive deficient medical care.  Am. Compl. ¶¶ 44-46. Wexford and Correct Care argue that (1) plaintiff's allegations of violations prior to June 30, 2014 should be barred as untimely and (2) plaintiff has not pled sufficient facts concerning a policy or custom that caused plaintiff's injuries.

### A.    Statute of Limitations Defense

Wexford and Correct Care argue that the Court should dismiss plaintiff's allegations of violations which occurred before June 30, 2014 as untimely.  Specifically, defendants contend that those events occurred more than two years prior to the filing of plaintiff's Complaint on June 30, 2016.  The Court concludes it cannot decide the statute of limitations issue on the face of the Amended Complaint.  That defense may be raised again after the parties have completed discovery.

Under Federal Rule of Civil Procedure 8(c), the statute of limitations constitutes an affirmative defense to an action.  The limitations defense may only be raised on a motion under Rule 12(b)(6) "where the complaint facially shows noncompliance with the limitations period and the affirmative defense [of the running of the statute of limitations] clearly appears on the face of the pleading."  *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).  The applicable statute of limitations for § 1983 actions in Pennsylvania is two years.  *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (period for § 1983 claims "is that which the State provides for personal-injury torts"); 42 Pa. Cons. Stat. Ann. § 5524(7) (period for personal-injury torts is two years).  Moreover, the statute of limitations applicable to § 1983 actions is tolled while a prisoner exhausts his administrative remedies as required by the Prison Litigation Reform Act of 1995.  *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 603-04 (3d Cir. 2015).

With respect to plaintiff's allegations concerning conduct prior to June 30, 2014, plaintiff states that he filed multiple grievances spanning years.  Am. Compl. ¶¶ 19, 26, 37.  From the information provided in the Amended Complaint and attached Exhibits, it is impossible for the Court to determine the length of time that plaintiff's claims were tolled by the filing of grievances.

For these reasons, the Court concludes that the statute of limitations issue cannot be resolved on the face of the Amended Complaint, and thus denies Wexford and Correct Care's Motion to Dismiss with respect to this defense.  This denial is without prejudice to defendants' right to raise the statute of limitations defense by motion for summary judgment and/or at trial if warranted by the facts and applicable law.

B.      *Monell* Claim

The Court next considers whether plaintiff has stated plausible *Monell* claims for inadequate medical care against Wexford and Correct Care.  To do so, plaintiff must aver (1) a constitutional violation by a state actor (2) that was caused by a municipal policy or custom. *Monell*, 436 U.S. at 694.

According to the Amended Complaint, from May 2013 to the fall of 2014, Wexford was a private company contracted by the DOC to provide medical services in state correctional institutions.  From the fall of 2014 to present, Correct Care has served as the provider of health services for inmates under contract with the DOC.  Plaintiff does not argue that Wexford and Correct Care were not acting under color of state law in providing medical services at SCI Camp Hill, SCI Laurel Highlands, SCI Forest, and SCI Chester.  Thus, the Court analyzes plaintiff's § 1983 claim against Wexford and Correct Care under the standard first enunciated in *Monell*. The Court must first determine if plaintiff has stated a plausible violation of his Eighth Amendment rights by employees of Wexford and Correct Care.

To state a claim for failure to provide adequate medical treatment, plaintiff must aver that an employee of each company acted with "deliberate indifference to a prisoner's serious illness or injury."  *Estelle*, 429 U.S. at 105.  The Court first considers conduct by employees of Wexford.  Despite recommendations from two different medical providers for intensive physical therapy, Wexford staff elected to provide limited physical therapy once a month or none at all, except for a six month period where plaintiff received more intensive treatment.  Employees at Wexford did so, knowing that plaintiff was at risk of "not ever being able to walk again" without proper treatment.  Am. Comp. ¶ 22.  Wexford employees also failed to follow up with one of the outside providers, Dr. Hudson, as he requested.  Am. Compl. ¶ 24.  Although plaintiff did

receive intensive therapy starting in May 2014 for six months, plaintiff received inadequate medical care from Wexford employees during the six months prior to this period.  Am. Compl. ¶ 27.

Correct Care employees engaged in similar conduct to Wexford staff in denying plaintiff adequate physical therapy beginning in November 2014.  Plaintiff alleges that Correct Care employees knew of his serious need for physical therapy.  Am. Compl. ¶ 45.  Nonetheless, Correct Care staff terminated plaintiff's intensive physical therapy in November 2014.  Am. Compl. ¶ 30.  Correct Care employees "made a determination [p]laintiff would no longer benefit from physical therapy based up on unfounded medical basis uncorroborated by any past or present treating medical doctors."  Am. Compl. ¶ 30.  Plaintiff was instead directed to complete unsupervised exercises.  Am. Compl. ¶ 34.  To date, Correct Care employees have not resumed plaintiff's physical therapy.  Am. Compl. ¶ 36.  The allegations concerning this conduct by Wexford and Correct Care staff plausibly establishes a constitutional violation.

However, to state a claim under *Monell*, plaintiff must also identify a policy or custom of Wexford and Correct Care that caused this constitutional violation.  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.  A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law."  *Monell*, 436 U.S. at 694. (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990) (internal quotations omitted)).  Plaintiff must also aver that the policy or custom "inflict[ed] the injury" alleged.  *Andrews*, 895 F.2d at 1480.

Plaintiff alleges that employees of both defendants ignored recommendations made by outside providers and denied him adequate treatment.  Am. Compl. ¶¶ 45-47.  He further alleges

that employees at Wexford and Correct did so pursuant to defendants' policies or customs of ignoring medical directives from outside providers and providing inadequate medical care.  Am. Compl. ¶¶ 25, 44-46.  According to the Amended Complaint, Wexford and Correct Care ignored recommendations from two medical providers that plaintiff required intensive physical therapy.  At least one provider stated that plaintiff could lose the ability to walk if not provided with adequate physical therapy.  Despite these recommendations, both Wexford and Correct Care continued to provide inadequate physical therapy over a period of years.

Plaintiff claims that the denial of intensive physical therapy was the result of Wexford's and Correct Care's alleged policies or customs of ignoring medical directives from outside providers and providing inadequate medical care. The alleged repeated denial of physical therapy despite recommendations for intensive physical therapy over a period of years is sufficient to plead a custom of ignoring medical directives from outside providers under *Monell*.  *See Stewart v. Wenerowicz*, No. 12-CV-4046, 2015 WL 5092865 at *16 (E.D Pa. August 27, 2015) (holding that alleging policies or customs of preventing inmates from receiving necessary and recommended medication and medical treatment and policies of denying medical treatment for non-medical reasons satisfies the policies or customs prong of *Monell*); *see also Rodriguez v. City of Phila.*, No. 14-CV-7362, 2015 WL 4461785, at *4 (E.D. Pa. July 21, 2015) ("A plaintiff is not obligated to plead with special particularity the exact policies and practices that were in place, prior to taking any discovery into the alleged policies, and explain exactly how these precisely alleged policies caused or contributed to plaintiff's injuries."); *Ramos-Vazquez v. PrimeCare Medical, Inc.*, No. 09-CV-0364, 2010 WL 3855546, at *8-9 (E.D. Pa. September 30, 2010) (holding that a plaintiff's allegation he was provided insufficient antipsychotic medication pursuant to a healthcare provider's policy or custom, without reference to other inmates'

treatment, adequately pled a *Monell* claim).  However, plaintiff's allegations are insufficient to plead a policy or custom of providing inadequate medical care.

The Court concludes that plaintiff's allegations plausibly state a *Monell* claim against both Wexford and Correct Care.  The Court thus denies Wexford and Correct Care's Motion to Dismiss.

## VI.   CONCLUSION

For the foregoing reasons, the Court partially grants the DOC and Lamas's Motion to Dismiss and dismisses plaintiff's claim against the DOC.  The Motion is denied as to Lamas. The Court denies Wexford and Correct Care's Motion to Dismiss.  An appropriate order follows.